## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Ericka KLABANOFF,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civ. No. 2:13-6954 (KM)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Ericka Klabanoff brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Klabanoff alleges that she is unable to engage in substantial gainful activity because she suffers from depression, anxiety, personality disorders, substance abuse problems, spinal conditions, and other ailments. (Pl. Br.[1] 3, ECF No. 11).

For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### I. BACKGROUND

Klabanoff seeks DIB and SSI benefits for a period of disability beginning October 1, 2007. (R.[2] 260, ECF No. 7). After holding a hearing on February 25, 2011 (*Id.* 39–74), Administrative Law Judge ("ALJ")

---

[1]    This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

[2]    "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 7).

1

Dennis O'Leary denied Klabanoff's initial application in a decision dated March 3, 2011. (*Id.* 118–26). The case was then remanded to the ALJ by the Appeals Council on August 30, 2012. (*Id.* 131–36). The ALJ held a supplementary hearing on January 10, 2013, at which Klabanoff was represented by counsel and testified for the second time. (*Id.* 75–113). The ALJ then denied Klabanoff's application a second time in a decision dated March 8, 2013. (*Id.* 12–34). On September 18, 2013, the Appeals Council denied Klabanoff's second appeal, making the ALJ's second decision the "final decision" of the Commissioner. (*Id.* 1–5). Klabanoff now appeals that decision.

## II.   DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

### a.  Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged

disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains

substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). That "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g) and the Third Circuit's *Podedworny* opinion, affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

### b. The Appeals Council's Order

On remand, the Appeals Council directed the ALJ to:

- Give further consideration to the examining and nontreating source opinions pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-5p

and 96-6p, and explain the weight given to such opinion evidence. . . .

- Further evaluate [Klabanoff's] subjective complaints and provide rationale in accordance with disability regulations pertaining to evaluation of symptoms (20 C.F.R. §§ 404.1529 and 416.929) and Social Security Ruling 96-7p.

- Further evaluate [Klabanoff's] mental impairment in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c).

- Give further consideration to [Klabanoff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. §§ 404.1545 and 416.945 and Social Security Rulings 85-16 and 96-8p).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). . . .

(R. 134–35).

### c. The ALJ's decision

On remand, the ALJ concluded that Klabanoff was not disabled. His determinations are as follows.

At step one, the ALJ determined that Klabanoff had not engaged in substantial gainful activity since October 1, 2007, her alleged disability onset date. (R. 25).

At step two, the ALJ found that Klabanoff had the following severe impairments: "lower back pain; neck pain; left shoulder pain; obesity; major depression; bipolar disorder; and a history of polysubstance abuse, now in remission." (Id.).

At step three, the ALJ determined that none of Klabanoff's impairments or combinations of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.* 25–26).

At step four, the ALJ found that Klabanoff could "lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; and perform unlimited pushing and/or pulling within the given weight restrictions." (*Id.* 28). Based on this residual functional capacity ("RFC") and the "combined effects of medication and depression," the ALJ found that Klabanoff could perform "jobs of a simple and repetitive nature involving 1-2 step processes to completion." (*Id.*). The ALJ also determined that Klabanoff was not able to perform any past relevant work. (*Id.* 33).

At step five, the ALJ considered Klabanoff's "age, education, work experience, and residual functional capacity," and determined that she could perform jobs that exist in significant numbers in the national economy. (*Id.*). As noted above, such a finding at step five requires that benefits be denied.

In his decision, the ALJ considered the following evidence: (1) treatment records from the Bergen Regional Medical Center; (2) group treatment records from the Quest Program; (3) hospitalization records for suicidal ideation and substance abuse as well as rehabilitation treatment records from the MICA program; (4) notes from a disability interviewer on April 2, 2009; (5) a report by consultative examiner Dr. Hasson; (6) Klabanoff's testimony from her hearing before the ALJ on January 10, 2013; (7) a report from non-examining State Agency medical consultant Dr. Hecker; (8) drug screens performed on Klabanoff; (9) treatment notes from Dr. Ramnanan; (10) treating records from psychiatrists Dr. Useine and Dr. Hossaine; (11) treating records from Dr. Nagendra; and (12) a

Third Party Function report by Klabanoff's friend Ms. Maria Vega. (*Id.* 18–25).

### d. Klabanoff's appeal

Klabanoff argues that the Commissioner's decision is not supported by substantial evidence. Specifically, Klabanoff argues that the ALJ: (1) ignored the weight of the evidence showing that she could not engage in substantial gainful activity; (2) erred in evaluating her credibility and ignoring her subjective complaints of pain; (3) improperly evaluated Klabanoff's mental impairments; (4) failed to consider the findings of Dr. Hasson; and (5) failed to consider Klabanoff's obesity pursuant to SSR 02-1p.

### e. Analysis

#### i. *The ALJ properly considered the evidence of Klabanoff's ability to engage in some form of substantial gainful activity (Plaintiff's Point I)*

Klabanoff argues that there was no evidence in the record to support the ALJ's finding that she could engage in some form of substantial gainful activity. (Pl. Br. 5 ("Point I")). Specifically, Klabanoff argues that (1) "[t]here are no medical reports indicating that Klabanoff could be employed" (*id.* 5, 7); (2) the ALJ's finding is contrary to medical reports of Klabanoff's "debilitating pain subsequent to her spinal surgery and continuing" (*id.* 7); and (3) the ALJ improperly weighed the evidence presented by Klabanoff, just as in *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (*id.* 8). Klabanoff's arguments are unpersuasive.

There are indeed medical reports indicating that Klabanoff could be employed. Specifically, there are reports indicating Klabanoff *was* employed, for over a year, during her alleged period of disability. (R. 266, 407–08). Klabanoff was employed at a laundromat from February 2008 to at least June 2009. (*Id.* 303–04; 407 (reporting that Klabanoff had worked for eighteen months)). During this period, Klabanoff worked

7

between twenty five and thirty hours per week and opened the business daily at 6:30am. (*Id.* 407).

Klabanoff's argument that the ALJ discounted evidence of Klabanoff's debilitating spinal pain is also unconvincing. The ALJ went into great detail discussing Klabanoff's spinal problems. The ALJ discussed her back and shoulder pain following a motor vehicle accident on December 29, 2009, the MRIs she underwent following the accident, and her treatment history with Dr. Ramnanan and Dr. Nagendra. (*Id.* 23–24). However, the ALJ also noted that the evidence did not support the conclusion that Klabanoff's pain was debilitating. For example, the ALJ noted that Klabanoff's report of "a flare-up of pain related to lifting and carrying her 4-year-old son in and out of the car . . . contradicts her testimony at the January 10, 2013 hearing that she cannot lift more than 10 pounds." (*Id.* 29, 613, 616). Notes from Dr. Ramnanan on August 6, 2010, following Klabanoff's motor vehicle accident, indicate that the range of motion in her spine was within normal limits and that her shoulder pain was under good control. (*Id.* 29, 445). Most important, the record demonstrated that even after her motor vehicle accident, Klabanoff lived alone and was able to carry out the functions of daily living, including cooking, shopping, cleaning, and doing laundry (*Id.* 27, 92–94, 593). She also reported having no difficulties with dressing, bathing, shaving, foot care, hair care, oral hygiene, or use of bathroom or kitchen appliances. (*Id.* 593).

As to Klabanoff's third argument, *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998), is not analogous to this case. In *Reddick*, the Ninth Circuit found that an ALJ had improperly rejected physician opinions because they were based on the claimant's subjective complaints of chronic fatigue syndrome. 157 F.3d at 726. The Ninth Circuit noted that "chronic fatigue syndrome is defined as "*self-reported* persistent or relapsing fatigue lasting six or more consecutive months."" *Id.* (citing

Centers for Disease Control, The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 *Annals of Internal Medicine* 954 (1994)) (emphasis in opinion but not cited source). Because "the presence of persistent fatigue is necessarily self-reported," the ALJ was wrong to discount the physician reports merely because they were based on the claimant's subjective complaints. *Id.* As the Third Circuit emphasized, "highly relevant to the *Reddick* court was the fact [that] chronic fatigure syndrome . . . was at issue." *Morris v. Barnhart*, 78 F. App'x 820, 824 (3d Cir. 2003). Because Klabanoff does not allege chronic fatigue syndrome, nor any other analogous self-reported disorder, *Reddick* is inapplicable here.

Therefore, Klabanoff's arguments regarding her inability to perform substantial gainful activity are unpersuasive.

### ii.  *The ALJ properly evaluated Klabanoff's credibility (Plaintiff's Points II and III)*

Klabanoff argues that the ALJ erred in evaluating her credibility by "ignor[ing] the evidence of pain suffered by [Klabanoff]," in violation of SSR 96-7p. (Pl. Br. 9–12); *see Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements,* SSR 96-7P (S.S.A. July 2, 1996). The ALJ's findings as to Klabanoff's credibility, however, are supported by substantial evidence.

SSR 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to

work may not be disregarded solely because they are not substantiated by objective medical evidence.

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). In this case, the ALJ did exactly what was required of him by giving specific reasons for his credibility findings that were supported by evidence in the record.

In evaluating Klabanoff's impairments in the four functional areas at step three, the ALJ used portions of her testimony from the January 10, 2013 hearing. The ALJ cited Klabanoff's testimony regarding living alone, watching TV, reading, and spending time with her mother to substantiate his finding the Klabanoff has only mild limitation in daily living. (R. 27, 92–94, 101, 593). For social functioning, the ALJ noted that although Klabanoff testified to everyone getting on her nerves, that records showed that Klabanoff "was stable, had some contact with her children, and even reported having a good Mother's Day." (*Id.* 27, 85, 108, 606).

At step four, the ALJ found that Klabanoff's testimony regarding "the intensity, persistence and limiting effects of [her] symptoms [was] not entirely credible" and explained his reasoning for this finding. (*Id.* 28).

For instance, although Klabanoff claimed to have disabling neck, left shoulder, and lower back pain, this claim was contradicted by evidence in the record. (*Id.* 29). Medical records from 2011 regarding Klabanoff's back pain included an X-ray that showed only mild degenerative joint disease. (*Id.* 29, 605). Also in 2011, medical records regarding Klabanoff's knee pain showed that Klabanoff had full range of motion in her knee and no instability. (*Id.* 29, 605). Records from Dr. Ramnanan in 2010 also showed normal strength in Klabanoff's upper and lower extremities, normal sensation, intact reflexes, normal motion

of the cervical spine, and good control of Klabanoff's cervical and left shoulder pain. (*Id.* 29, 441–48, 449–73).

The record showed that although Klabanoff reported that she could not lift more than ten pounds, records from Bergen Regional Medical Center showed that Klabanoff had carried her four-year-old son from the car and into the house. (*Id.* 29, 90, 613, 616). (She did say, however, that this caused a flare-up of pain.)

Klabanoff testified that no doctor had ever recommended surgery for her pain. (*Id.* 88). Rather, Klabanoff has undergone less invasive treatment for her pain, including physical therapy, chiropractic therapy, prescriptions for Percocet and Flexeril, and lumbar epidural injections. (*Id.* 29, 441–48, 449–73, 637–652).

The ALJ also noted that although Klabanoff testified that she was fired from her work at a laundromat because of her back pain, her treatment notes from Bergen Regional Medical Center on July 2009 state that she was fired for letting her friends use the laundry machines for free. (*Id.* 29–30, 81, 100, 561).

Despite Klabanoff's claims that she naps during the day and has no energy, treatment notes indicated that Klabanoff was performing several activities of daily living, including visiting with her children on the weekends,. (*Id.* 29, 92–94, 101, 593).

Finally, although Klabanoff alleged a disability onset date of October 1, 2007, she testified to not knowing anything about the selection of that date. (*Id.* 29, 91).

Therefore, the ALJ had a sufficient basis to find that, in light of the entire record, Klabanoff's testimony was not entirely credible. (*Id.* 28).

### iii.   *The ALJ properly evaluated Klabanoff's mental impairments under 20 C.F.R. §§ 404.1520a and 416.920a (Plaintiff's Point IV)*

Klabanoff next argues that the ALJ violated the Appeals Council's remand order to evaluate Klabanoff's mental impairments in accordance with the special technique in 20 C.F.R. §§ 404.1520a and 416.920a. (Pl. Br. 13). I find, however, that the ALJ properly applied the special technique and had substantial evidence to support his conclusions.

Under the technique, the ALJ must first "evaluate [a claimant's] "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)" of the regulation." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Paragraph C identifies the four broad functional areas in which the ALJ must evaluate the degree of a claimant's limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) periods of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). An ALJ must use the following five-point scale to rate the degree of limitation in the first three functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth functional area—episodes of decompensation—is measured by the number of periods of decompensation (none, one or two, three, four or more). *Id.*

If the ALJ finds that a mental impairment is severe, the ALJ must then "determine if it meets or is equivalent in severity to a listed mental disorder . . . by comparing the medical findings about [the] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the claimant's impairment or combination of

impairments don't meet or equal the severity of a listed disorder, the ALJ goes on to evaluate a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

In this case, the ALJ described Klabanoff's symptoms, signs, and medical findings. (R. 18–25). He then found the following severe mental impairments: major depression; bipolar disorder; and a history of polysubstance abuse, now in remission. (*Id.* 25).

The ALJ then went on to evaluate, based on the evidence, the degree of Klabanoff's limitations in the four broad functional areas, finding: (1) mild restriction in daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties in concentration, persistence, or pace; and (4) one or two episodes of decompensation. (*Id.* 27). The ALJ supported his conclusions with references to Klabanoff's treatment records, her hospitalization records, a third party report from Klabanoff's friend, Ms. Vega, and her employment records. (*Id.*).

To support his finding in the area of daily living, the ALJ cited a report by Dr. Hasson stating that Klabanoff lives alone, eats out, and shops on her own. (*Id.* 27, 407). The ALJ also cited Klabanoff's testimony at the January 10, 2013 hearing, during which she confirmed that she lives alone and stated that she watches TV, reads, and spends time with her mother often. (*Id.* 27, 92–94).

To support his finding in the area of social functioning, the ALJ cited a report by Ms. Vega, in which she stated that Klabanoff does not get along with people well, but also that Klabanoff's friends and mother help her pay bills. (*Id.* 27, 331, 333).

The ALJ also noted that in 2009 Klabanoff mentioned meeting a new boyfriend. (*Id.* 27, 564). Finally, the ALJ noted that although Klabanoff claimed not to get along well with others, that she had contact

with her children and reported having a good Mother's Day in 2011. (*Id.* 27, 85, 107, 606–07).

For the area of concentration, persistence, or pace, the ALJ cited a report from Dr. Hasson finding mild impairment in concentration. (*Id.* 27, 409). The ALJ also noted that even when Klabanoff was hospitalized in 2008, she was able to "do serial 3's, calculate the number of nickels in $1.35, and remember 3/3 objects in 5 minutes". (*Id.* 27, 402). The ALJ cited to certain treatment records showing that Klabanoff was impulsive and others showing that she had intact memory, concentration, and attention. (*Id.* 27, 524–73, 597–636).

Finally, in analyzing episodes of decompensation, the ALJ noted that Klabanoff had experienced one or two such episodes. From December 9 to December 17, 2008, Klabanoff was hospitalized for suicidal ideation and possibly also drug use. (*Id.* 27, 366–405). From December 18 to December 24, 2008, Klabanoff attended a rehabilitation program. (*Id.* 27, 524–73).

After analyzing the four functional areas, the ALJ determined that because Klabanoff did not have "marked" limitation in at least two functional areas, or marked limitation in one functional area along with "repeated" episodes of decompensation, and because there was no evidence showing Klabanoff would be unable to function outside of a highly supportive living environment, her mental impairments did not meet the paragraph B or C criteria in the Listings for Affective Disorders, Personality Disorders, or Substance Addiction Disorders. (*Id.* 27); 10 C.F.R. §§ 404.1520a(d)(2), 416.920(d)(2); 10 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04, 12.08, 12.09.

Therefore, pursuant to 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3), the ALJ went on to analyze Klabanoff's residual functional capacity.

Klabanoff argues that (1) the ALJ "neglected to consider and incorporate [her] substantial psychiatric history"; and (2) the ALJ failed to explicitly mention 20 C.F.R. 404.1520a or 416.920a in his analysis. (Pl. Br. 14).

As for the first argument, it is clear that the ALJ discussed Klabanoff's psychiatric history in great detail. (*Id.* 18–25). The ALJ also justified his findings about Klabanoff's limitations in the four functional areas with evidence from the record. (*Id.* 27). I find, and Klabanoff does not dispute, that the ALJ had substantial evidence for each of his determinations in the four functional areas. Klabanoff's long psychiatric history and record of traumas are certainly not insignificant; however, the ALJ had substantial evidence for his conclusion that her mental impairments do not meet or exceed the criteria of any Listings in the regulation.

As for Klabanoff's second argument, there is no requirement that an ALJ explicitly cite to 20 C.F.R. §§ 404.1520a or 416.920a in his analysis. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (An ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis."). In this case, it is clear that the ALJ adhered to the analysis required by 20 C.F.R. §§ 404.1520a and 416.920a. A reference to the regulation by name is unnecessary.

The ALJ properly evaluated Klabanoff's mental impairments in accordance with the special technique in 20 C.F.R. §§ 404.1520a and 416.920a.

### iv. *The ALJ properly analyzed Dr. Hasson's findings (Plaintiff's Point V)*

Klabanoff next argues that the ALJ violated the Appeals Council's order to consider the findings of Dr. Charles Hasson, a consultative examining physician. (Pl. Br. 14–15). Klabanoff acknowledges that the ALJ did include Dr. Hasson's findings in his decision, but says that "[t]he

mere recitation of the report does not suffice," especially because Dr. Hasson assigned a Global Assessment of Functioning (GAF)[3] score of 50 to Klabanoff. (*Id.* 15; *see* 20–21). I find that the ALJ did not merely recite Dr. Hasson's findings; rather, the ALJ properly evaluated the findings and gave reasons for rejecting Dr. Hasson's estimated GAF score.

While an ALJ need not itemize every piece of evidence considered, the ALJ is required to address evidence that, if considered, would lead to a contrary result. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted) (explaining that the ALJ must "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition" and remanding for failure to mention and refute contradictory evidence). The ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (remanding due to ALJ's failure to "review all of the pertinent medical evidence" and explain "his conciliations and rejections.").

In this case, the ALJ considered summarized Dr. Hasson's findings (R. 20–21), relied on them to a certain extent, and properly explained his reasons for assigning limited weight to them.

At step two of the five-step analysis, the ALJ used Dr. Hasson's findings of "mild impairment" in concentration to conclude that Klabanoff has moderate difficulties in the functional area of concentration, persistence, or pace. (*Id.* 27).

---

[3]     A GAF (Global Assessment Functioning) score is a scale used by the American Psychiatric Association to evaluate mental disorders. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV).

At step four, the ALJ discussed Dr. Hasson's findings while evaluating Klabanoff's residual functional capacity. The ALJ noted that Dr. Hasson found Klabanoff to be suffering from "depressive disorder, NOS; rule out bipolar disorder; crack cocaine dependence; and a personality disorder, NOS; with a current and prior year GAF of 50." (*Id.* 30). The ALJ decided to give "limited weight" to Dr. Hasson's opinion because it was inconsistent with other evidence:

> A GAF score of 50 reflect serious impairment in social, occupational, or school functioning, including the inability to keep a job, but it appears that the claimant was functioning at a higher level at that time, since she was working at the laundromat up to that point.

(*Id.*).

Klabanoff does not specify why this analysis is insufficient in her view. Rather, she generally asserts that Dr. Hasson merely repeated Dr. Hasson's findings without actually considering them. Clearly, that is not the case. The ALJ sufficiently considered Dr. Hasson's findings and gave appropriate reasons for assigning the findings limited weight. The ALJ even relied on the findings to a certain extent. No more was required.

### v. *The ALJ properly evaluated Klabanoff's obesity (Plaintiff's Point VI)*

Klabanoff argues that the ALJ violated the Appeals Council's directive to evaluate Klabanoff's obesity on remand pursuant to SSR 02-1p.[4] (Pl. Br. 15–16 ("Point VI[5]")). However, the ALJ clearly considered Klabanoff's obesity throughout the five-step process, as required by the Social Security regulations.

---

[4]     SSR 02-1p requires that an ALJ consider a claimant's obesity throughout the five-step process. *See Titles II & Xvi: Evaluation of Obesity*, SSR 02-1P (S.S.A. Sept. 12, 2002).

[5]     Klabanoff's brief erroneously titles this "Point IV."

At step two, the ALJ found that Klabanoff's obesity was a "severe" impairment. (R. 25).

At step three, the ALJ noted that there is no listing for obesity, but that obesity may increase the severity of other impairments and thereby meet the criteria of a listing. (*Id.* 26). However, because the ALJ found that Klabanoff was able to "perform the activities of daily living, and socialize to a certain extent," he concluded that her obesity, even when combined with her other impairments, did not meet or equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1. (*Id.*).

At step four, the ALJ took Klabanoff's obesity into account in determining her residual functional capacity. Specifically, the ALJ explained that although obesity can cause physical and mental limitations, "[i]n the present case, the claimant remains able to perform the activities of daily living and live independently despite her obesity and her other physical and mental impairments." (*Id.* 32). This conclusion was supported by evidence in the record—for example, treatment records showing that Klabanoff was able to find a job at a laundromat and work there for over a year. (*Id.* 30; 409–410).

Beyond generally arguing that the ALJ "blithely conclude[d]" that Klabanoff could function despite her obesity (*see* Pl. Br. 16), Klabanoff makes no specific arguments as to why the ALJ's consideration of her obesity was insufficient. Klabanoff points to some evidence to suggest that she has difficulty functioning, but that is not the relevant inquiry. There is substantial evidence in the record to support the ALJ's findings; that some evidence goes the other way does not require reversal. Indeed, Klabanoff's record citations are to the ALJ's opinion itself (*see id.* (citing *id.* 24–27)), only highlighting the fact that the ALJ considered all of the relevant evidence.

### III.     CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED.

Dated: March 24, 2015

**KEVIN MCNULTY**
**United States District Judge**